IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEITH RAGER,                        )
                Plaintiff,          )
                                    )
        v.                          ) Civil Action No. 07-0617
                                    )
UNITED PARCEL SERVICE, INC.,        )
                Defendant.          )


MEMORANDUM and ORDER

Gary L. Lancaster,                              November 7, 2008
U.S. District Judge.

        This is an action in employment discrimination.

Plaintiff, Keith Rager, alleges that he was discriminated against

because of his age by defendant, United Parcel Service, Inc.

(UPS), in violation of the Age Discrimination in Employment Act

(ADEA), 29 U.S.C. § 621, et seq.[1]  Specifically, Rager contends

that he was constructively discharged in June of 2005 after he

was transferred and passed over for several promotions.  Rager

seeks monetary and injunctive relief.

        UPS has filed a motion for summary judgment [doc. no.

14].  UPS contends that Rager cannot prove that his work

conditions became so intolerable that he had no choice but to

resign.  UPS argues in the alternative that even if Rager could

prove that he was constructively discharged, he cannot establish

the necessary pretext to rebut its legitimate non-discriminatory

---

[1]     Rager has abandoned his Title VII gender
        discrimination claim and his PHRA claims.

reasons for transferring and failing to promote him.  In
opposition to the motion for summary judgment, Rager argues that
he can prove both that he was constructively discharged and that
the real reason for UPS's employment decisions was age
discrimination.

For the reasons that follow, we will grant UPS's motion
for summary judgment.

I.   FACTUAL BACKGROUND

All material facts discussed herein are undisputed
unless otherwise indicated.  Other facts will be discussed in the
memorandum in context.

Keith Rager (DOB 9/30/57) began working for UPS in
1979.  From the inception of his employment, he enjoyed steady
advancement, culminating in his promotion to Business Manager in
July of 1992.  A Business Manager is responsible for managing the
daily package delivery process and operations of an assigned
Business Center, ensuring quality and service to UPS customers,
coordinating and scheduling the Center's workload, training the
workforce, and enforcing UPS policies.  Between 1992 and 2005
Rager held the Business Manager position at four different
Business Centers: Mon Valley, Johnstown, Greensburg, and City
(Pittsburgh) North.

Rager resigned from UPS on June 3, 2005, about two months after he was transferred to the City North Business Center.

Rager alleges that he was forced to resign because he was passed over for promotions and because the terms and conditions of his employment became intolerable after he was transferred to the City North Business Center in April of 2005. According to Rager, his health suffered as a result of these conditions, leaving him with no choice other than to resign. The factual details relevant to these claims will be discussed in context below.

II.  LEGAL AUTHORITY

A.  Summary Judgment

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather must go beyond the pleadings and present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts, however, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. Id. at 248-49. Under these standards, the non-moving party must do more than show there is "some metaphysical doubt" as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Although inferences must be drawn in favor of the non-moving party, "an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a

summary judgment motion.  Williams v. Borough of W. Chester, 891

F.2d 458, 460 (3d Cir. 1989) (citing Celotex Corp. v. Catrett,

477 U.S. 317, 325 (1986)); see also Lujan v. Nat'l Wildlife Fed.,

497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to

replace conclusory allegations of the complaint ... with

conclusory allegations of an affidavit").


    B. ADEA

    The ADEA prohibits employers from discriminating against

individuals in hiring, discharge, compensation, term, conditions,

or privileges of employment on the basis of their age.  See 29

U.S.C. § 623(a)(1).  To establish a prima facie case of age

discrimination under the ADEA, a plaintiff must show that he: (1)

was a member of a protected class, i.e., that he was over forty;

(2) was qualified for the position; (3) suffered an adverse

employment action; and (4) was ultimately replaced by a person

sufficiently younger to permit an inference of age

discrimination.  Connors v. Chrysler Fin. Corp., 160 F.3d 971,

973-74 (3d Cir. 1998).  The evidence must be sufficient to

convince a reasonable factfinder to find all of the elements of

the prima facie case.  Id. at 974.  Once an employee proves his

prima facie case, an inference of unlawful discrimination is

created and the burden of production shifts to the employer to

articulate a legitimate, nondiscriminatory reason for its actions.  Id. at 974 n.2.  If the employer meets this burden, then the employee must prove by a preponderance of the evidence that the articulated reasons are a pretext for discrimination. Id.

An employee may satisfy the third element of his prima facie case, the adverse employment action, by proving that he was constructively discharged.  To establish a constructive discharge, an employee must show that "'the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'"  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1084 (3d Cir. 1996) (quoting Goss v. Exxon Office Sys. Co., 747 F.2d 885, 888 (3d Cir. 1984)); see also Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 317 n.4 (3d Cir. 2006).  In other words, an employee must show that the discrimination surpassed a "threshold of intolerable conditions."  Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 169 (3d Cir. 2001) (internal quotations omitted).  "Intolerability ... is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign - that is, whether he would have had no choice but to resign."  Connors, 160 F.3d at 976 (citation omitted).

III.  <u>DISCUSSION</u>

Rager contends that he was constructively discharged in June of 2005.  His laundry list of reasons as to why he was constructively discharged fall into three categories: (1) his transfer to the City North Business Center resulted in intolerable working conditions; (2) he was repeatedly passed over for promotions; and (3) he was in poor health.  As an initial matter, Rager's claim fundamentally fails because he has presented no evidence from which a reasonable jury could conclude that any of these circumstances existed because of his age.  In addition, Rager has failed to produce evidence that the circumstances that he describes created a work environment so intolerable that he, acting as a reasonable employee, had no choice but to resign.  We nevertheless examine each of the reasons that Rager submits in support of his constructive discharge claim in detail below.

A.  <u>City North Business Center Transfer and Conditions</u>

Rager makes several complaints regarding his transfer to City North, which allegedly resulted in his forced resignation.  These complaints include that he was denied relocation benefits, that he was transferred to a Business Center that was underperforming and described by co-workers as a "hell hole",

that he was not given the resources necessary to fix the Center, and that management harassed him and expected to see immediate improvements in the Center's operations.

Rager's only evidence that his transfer to and the conditions at City North were due to his age is a comment allegedly made by Art Duggan, a management employee, that Rager should be able to fix the City North operations because he was an "old salt."  This comment alone cannot support Rager's claims of age discrimination.  First, we find no evidence in the record that Duggan was involved in the decision to transfer Rager to City North.  Gomez v. Allegheny Health Services, Inc., 71 F.3d 1079, 1085 (3d Cir. 1995) (stray remarks by non-decision makers are inadequate to support an inference of discrimination).  Second, the comment was made after Rager began working at City North, and thus, could not have been a cause of his transfer, or of the allegedly poor working conditions that Rager himself admits existed well before he got there.  Lastly, the form of Rager's evidence of this comment is faulty.  Rager cites to his affidavit, attached to his opposition brief.  An unsubstantiated affidavit is generally insufficient to overcome summary judgment.  Lujan, 497 U.S. at 888.  We further note that Rager failed to reference this comment during the discovery process.  Rager cannot create a dispute of material fact by relying upon evidence

not revealed or relied upon in discovery.  Jiminez v. All Am.
Rathskeller, Inc., 503 F.3d 247, 254 (3d Cir. 2007) (setting
forth the Court of Appeals for the Third Circuit's flexible
approach to the sham affidavit doctrine).

Apart from this one comment from Mr. Duggan, which is
insufficient, standing alone, to support his claims of age
discrimination, Rager has presented no other evidence that his
transfer to, and the working conditions at, City North had
anything to do with his age.  In order to establish a
constructive discharge claim, Rager must show that UPS "knowingly
permitted conditions of [age] discrimination in employment".
Without establishing this essential pre-requisite, Rager's
constructive discharge claim fails.

Even though we find this essential element lacking, in the
spirit of construing the record in favor of the non-moving party,
we will assume for purposes of deciding this motion that Rager
could prove that age discrimination motivated his transfer to and
the conditions at City North.  Therefore, we must go on to
determine whether the working conditions at City North were so
intolerable so as to constitute a forced resignation.  Upon
examination, none of the reasons that Rager gives as to why the
transfer or the conditions at City North resulted in his
constructive discharge support his claim.

Relocation Expenses:  Rager now admits that he was not entitled to relocation benefits when he was transferred from Greensburg to City North in 2005.  However, he still contends that a lack of relocation benefits supports his constructive discharge claim because he should have been paid relocation benefits for his 2001 transfer from Johnstown to Greensburg. Rager SMF ¶¶ 41, 42 [doc. no. 20].  According to Rager, this lack of relocation benefits in 2001 forced him to live away from his family in a separate residence for three years, causing stress and anxiety, leaving him with no choice but to resign in 2005. This claim is not sustainable.  First, Rager admits that he bought a townhouse in Greensburg due to a back problem that made it impossible for him to drive, as he had been doing, from Johnstown to Greensburg on a daily basis.  Rager's Brief at p. 9 [doc. no. 21].  The back problem, not the lack of relocation benefits, led to the creation of separate residences.

Second, the 2001 claim is too remote in time to have any effect on our analysis of Rager's 2005 constructive discharge claim.  In fact, that Rager tolerated the separate residence for so long weakens his argument that the condition was so intolerable that it forced him to resign.  Finally, the condition that allegedly led to his resignation, transfer to City North, admittedly reunited Rager with his family, not kept him from

10

them, regardless of whether UPS would pay for moving expenses. Rager SMF ¶ 38 [doc. no. 20].

Underperforming Center: Rager's allegations as to why his transfer to a Business Center that was poorly performing resulted in his constructive discharge are somewhat disjointed. Apparently Rager contends that because UPS had no real reason to transfer him to City North, it must have sent him there because UPS knew it was a bad Center and intended to make Rager so miserable that he would quit. In support of this theory, Rager states that UPS manufactured the notion that Rager would be attending law school in Pittsburgh to justify his transfer to City North, when, in fact, Rager was "never...accepted to or enrolled in any law school." Rager Brief at p. 8 [doc. no. 21]. However, Rager acknowledges that he told a management level employee that he "had applied to Duquesne Law School" prior to his transfer to City North. [doc. no. 22-12, PL314].

Similarly, Rager takes issue with the fact that two other Business Center Managers, Smith and Royal, should have been transferred to City North instead of him because they lived in Pittsburgh. This fact proves nothing in support of Rager's age discrimination case. UPS is not required to make the most geographically logical choice when transferring employees. Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005) (citing

Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)) (it is not
enough to show that the employer's decision was wrong or
mistaken, since the factual dispute at issue is whether
discriminatory animus motivated the employer, not whether the
employer is wise, shrewd, prudent, or competent).  The fact that
UPS did not transfer a Pittsburgh resident to the City North
Center does nothing to support Rager's claim that he was
transferred to City North as a ploy to force his resignation due
to his age.  No reasonable jury could find support for Rager's
strained theory on this record.

Lack of Resources:  Next, Rager contends that he was
forced to resign because he was not provided with adequate
staffing at the City North Center.  No reasonable jury could
conclude that in the two months that Rager worked at City North
the staffing issues became so unbearable that Rager had no choice
but to quit.  As an initial matter, Rager admits that he was
given more drivers and trucks in the short time he was there and
that an open supervisory position was filled, although not to his
satisfaction.  Regardless, staff shortages alone do not support a
constructive discharge claim.  Duffy, 265 F.3d at 169 (staff
shortages made job more stressful, but not unbearable) (citing
Connors, 160 F.3d at 975).  The alleged lack of staffing

described by Rager does not cross the "threshold of intolerable conditions" such that a reasonable person would have quit.

Performance Expectations:  Finally, Rager contends that he was forced into resigning because he was "placed under enormous pressure to succeed immediately" upon being transferred to City North.  Specifically, Rager reports harassing inquiries and demands from four superiors: Carrie Alderman, Art Duggan, Arthur Nwokeuku, and Keith Washington.  When Rager's own testimony is reviewed, instead of his presentation of the testimony in his brief and statement of facts[2], no reasonable jury could conclude that the inquiries from Rager's supervisors were so intolerable that a reasonable employee would have had no other choice than to quit.  The alleged harassment from management consisted of one call from Alderman and one call from Duggan shortly after Rager began working at City North; weekly, at most, calls from Alderman thereafter; and that Nwokeuku, another supervisor, would ignore him when he visited the Center.  Rager now acknowledges that Washington never criticized him personally, but was instead critical of the Center itself.  Rager Depo. pg. 99.  Although

_____

[2] For instance, Rager's own deposition testimony does not support the claim in his brief that he was subjected to "daily abuse from his superiors for the failure to turn around a chronically underperforming business center..." [doc. no. 21 at p. 22; Rager SMF at ¶¶ 63 and 67 (citing to Rager Depo. at pp. 84, 97-100)].

Rager claims that Alderman screamed at him on the phone during the first call, he describes her later calls to him as being offensive because she put him on speaker phone without his consent, failed to give him time to answer her questions, "berated" the Center's performance numbers, and let Rager know that she expected an immediate change.

Rager has presented no evidence from which a reasonable jury could conclude that these circumstances rose to the level of being so intolerable that a reasonable person would have quit. Rager has presented no evidence that management acted in a way that was shocking, offensive, or abusive. There is no basis on this record for a reasonable jury to find that management imposed "unreasonably exacting standards of job performance" on Rager such that could support a constructive discharge claim. Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1162 (3d Cir. 1993).

Rager has proven no more than that management placed expectations upon him that he did not like, and did not think were fair. However, a tough, or unfair, boss does not an age discrimination claim make. Id. at 1162 ("unfair and unwarranted treatment is by no means the same as constructive discharge"). That Rager reacted negatively to the management style of his supervisors and personally believed it to be unfair, is also not the basis for an age discrimination claim. Id. (stating that the

14

law does not permit an employee's subjective perceptions to govern a claim of constructive discharge). Instead, a jury will be asked to determine how a reasonable person would have reacted. Rager has presented no evidence from which a jury could find that a reasonable employee would have quit in the face of the treatment he received from some of his supervisors. As such, complaints regarding performance expectations from management do not support Rager's constructive discharge claim.

In summary, none of the reasons advanced by Rager would allow a reasonable jury to conclude that Rager was transferred to City North due to his age, or that conditions there were so intolerable that he had no choice but to resign. In addition, as did the Court of Appeals for the Third Circuit, we find it "highly significant" to Rager's constructive discharge claim that he never indicated to his superiors after he arrived at City North that he felt compelled to resign in the face of the conditions there. Clowes, 991 F.2d at 1161. As such, his constructive discharge claim based on these allegations fails.

B.    The Promotions

Next, Rager contends that he was constructively discharged because he was repeatedly passed over for promotions. To prevail on this theory of constructive discharge, Rager would have to

prove that he was not promoted due to his age, and that the
failure to promote created an intolerable work condition that
would force a reasonable employee to quit. Rager must prove that
UPS, through failing to promote him, "...knowingly permitted
conditions of [age] discrimination in employment so intolerable
that a reasonable person subject to them would resign." Cort
Furniture, 85 F.3d at 1084; Spencer, 469 F.3d at 317 n.4. Again,
Rager does not have the evidence to support his claim.

As an initial matter, we must determine to which
promotions Rager was allegedly entitled. Rager identifies two
additional promotions in his summary judgment papers that were
not referred to in his Complaint. Construing the record in
Rager's favor, for purposes of ruling on this motion, we will
consider these two additional promotions. Thus, there are 5
positions over a course of 6 months that Rager (DOB 9/30/57)
claims he was passed over for:

- District Labor Relations Manager (11/04; Eans
  promoted (DOB approximately 1972)) [position not
  listed in Complaint]

- District Human Relations Manager/Workforce
  Planning Manager (9/04; Zimmerman promoted (DOB
  approximately 1972)) [position not listed in
  Complaint]

- District Labor Relations Manager (11/04 or 4/05; Washington promoted (DOB 6/19/64))

- Division Manager (1/05; Kincade promoted (DOB 6/1/65))

- Training Manager (5[3]/05; Hatfield promoted (DOB 10/14/56))[4]

Before proceeding to analyze Rager's constructive discharge claim based on his failure to obtain any of these positions, we note that none of these five promotions could support an independent age discrimination claim based upon a failure to promote. The first four are time barred because they occurred more than 300 days before Rager filed his charge with the EEOC, i.e., prior to May 13, 2005, and cannot be saved under the continuing violation theory. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2); Nat'l R.R. Passenger Corp. v. Morgan, 536

---

[3] It is unclear from the record exactly when this final promotion occurred. Compare UPS SMF ¶10 (May 2005) to UPS SMF ¶34 (April 2005) [doc. nos. 17, 20]. At times, both parties refer to Ms. Hatfield as having been promoted in April and May. Construing the record in favor of Rager, we will find that she was promoted in May of 2005 for purposes of summary judgment. However, the exact date of Hatfield's promotion is not material to resolving this motion.

[4] We dismiss outright Rager's claims that he was subjected to intolerable working conditions because he was told he would get Hatfield's position one day, and transferred to City North the next. Rager was never promised this job - he was told there was "more than a possibility" that he could get it by his direct manager. That upper management reached a different decision is not evidence of a constructive discharge.

U.S. 101, 114 (2002) (finding that the continuing violation doctrine has no applicability to discrete acts of discrimination such as failure to promote); see O'Connor v. City of Newark, 440 F.3d 125, 128 n.4 (3d Cir. 2006) (noting that the Court of Appeals for the Third Circuit has applied Morgan, a Title VII case, to ADA actions in two unpublished decisions). The final promotion was given to an employee who was older than Rager. Nevertheless, we will consider whether being passed over for these promotions can act as background evidence to support Rager's allegations of constructive discharge. Morgan, 536 U.S. at 113.

Rager's first hurdle is to establish that he did not receive each of these promotions due to his age. Rager attempts to prove that he was denied the promotions due to his age because around the same time that the promotions were being awarded Wes Southall and Art Duggan made "ageist" comments to him. According to Rager, both men told Rager that he was too old to start a new career in Human Resources or Labor with UPS. Rager's only evidence of these comments is, once again, the affidavit he drafted and attached to his opposition brief. An unsubstantiated affidavit is generally insufficient to overcome summary judgment. Lujan, 497 U.S. at 888. Although it is always difficult for an employee to prove such comments, here, we note that Rager never

specifically referenced the comments until now.  Rager cannot create a dispute of material fact by relying upon evidence not revealed or relied upon in discovery in an effort to defeat summary judgment.  Jiminez, 503 F.3d at 254.  Thus, this evidence is highly suspect.  Regardless, these two alleged comments would be insufficient to support a constructive discharge claim. Duffy, 265 F.3d at 170.

Rager has not come forth with any other evidence that a decisionmaker considered his age, or the age of the other employees, in making the employment decisions at issue.  Instead, undercutting any notion that age factored into UPS's promotional decisions is that one of the promotions at issue was given to an employee who was within the same age class as Rager, one was given to an employee who was one year younger than the protected class, i.e., 39, and one was given to an employee who was older than Rager.  The only employees who were promoted that were significantly younger than Rager were Eans and Zimmerman, who are 7 to 8 years younger than Rager.  These are the two positions that Rager failed to include in his Complaint and added to the case only at the summary judgment stage.  Such evidence is not particularly convincing, and no reasonable jury could infer age discrimination motivated all five promotions based on this record.  Without some evidence from which to find or infer that

UPS failed to promote Rager because of his age, Rager cannot make out the first prong of his constructive discharge claim.

Regardless, even if Rager could prove the required element of age discrimination, which we find he cannot do, no reasonable jury could conclude that UPS, by failing to promote him, created a condition so intolerable that a reasonable person would resign. Rager has done no more than collect all the promotions that occurred over a period of six months, claim entitlement to them, and allege that the situation was so unbearable that he had no choice but to quit immediately. We find the reasoning of the Court of Appeals for the Sixth Circuit on this point to be persuasive. A plaintiff cannot establish a constructive discharge by claiming, without more, that his employer's "failure to promote [him] to what [he] perceives as [his] rightful position created intolerable work conditions." Hartsel v. Keys, 87 F.3d 795, 800 (6th Cir. 1996). "If we were to accept this line of reasoning, every person passed over for a purportedly deserved promotion could bring an illegal discharge suit, and the distinction between the two would be erased." Id.

There is nothing on the record that could lead a reasonable jury to believe that Rager's failure to obtain any, or all, of the promotions about which he complains led inevitably and directly to his resignation. It is common for employees to

be passed over for promotions for which they consider themselves to be suited.  Without more, failure to be promoted, especially over a period of only six months, cannot create a work environment so intolerable that an employee has no choice but to resign.

Moreover, even if Rager could satisfy both prongs of his constructive discharge claim based on these promotions, thus establishing the elements of his prima facie case, Rager could not ultimately prevail on his age discrimination claim because he cannot come forth with evidence of pretext sufficient to rebut UPS's legitimate non-discriminatory reasons for not promoting him.  UPS contends that it did not promote Rager to any of these positions because he was not eligible for the promotions.  Rager has acknowledged that his direct supervisor, Mr. Loughery, had raised performance issues with him, and that the performance problems "were improving" in 2004, the year that the promotions began.  Rager's SMF ¶ 22 [doc. no. 20].  We certainly would not characterize Rager as a poor employee based on this record, but the fact that performance issues were still in the stage of "improving" in the same year that the promotions began to be awarded is important to our analysis.  An employee who was in the process of addressing performance issues with his boss would be a less likely candidate to be promoted.  Furthermore, Rager can

also not dispute that his managers never recommended him for any of the promotions at issue, and that upper management did not concur that he should be placed on the "Ready Now" list - both of which are pre-requisites to being promoted at UPS.

Instead of disputing these facts, Rager claims that he has established pretext because he held advanced degrees and certifications and had practical work experience that the promoted employees did not. In other words, according to Rager, he deserved the promotions more. Rager's personal belief that he should have been promoted does not prove that UPS's reasons for promoting the other employees, most of whom we note again were near Rager's age, or older, were pretext for age discrimination.

Looked at from any point of analysis, no reasonable jury could find that Rager has established an age discrimination claim based on his failure to be promoted.

C.  Health Problems

Finally, Rager alleges that he was constructively discharged because his health suffered due to the intolerable working conditions to which he was subjected at UPS. This claim does no more than reiterate the conditions listed above, describe their alleged physical and emotional effects on Rager, and conclude that a forced resignation resulted. Although Rager

lists this as the "seventh reason[] for [his] constructive discharge," he implicitly acknowledges that this is not a separate claim by including no further argument on it in his brief. Regardless, Rager has provided no medical evidence that his physical or mental condition left him with no other option than to resign. No reasonable jury could find that this allegation supports a constructive discharge claim.

IV. <u>CONCLUSION</u>

Rager's alleged reasons as to why his treatment at UPS led to his forced resignation, in violation of the ADEA, are not sustainable on this record. Rager has presented no evidence that he was transferred to City North due to his age, subjected to poor work conditions there due to his age, or not promoted due to his age. Nor has Rager presented any evidence that would allow a reasonable jury to conclude that any of those conditions were so intolerable that an reasonable employee would have had no other choice than to resign. Finally, even if Rager could satisfy these elements, thus establishing his <u>prima</u> <u>facie</u> case under a constructive discharge theory, Rager has again failed to produce any evidence to rebut UPS's legitimate non-discriminatory reasons for its business decisions. As such, no reasonable jury could conclude based on this record that the real reason for Rager's

transfer and lack of promotion was his age.  Accordingly,

judgment as a matter of law will be entered in UPS's favor.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEITH RAGER,                          )
            Plaintiff,                )
                                      )
        v.                            ) Civil Action No. 07-0617
                                      )
UNITED PARCEL SERVICE, INC.,          )
            Defendant.                )

ORDER

_____AND NOW this 7th day of November, 2008, IT IS HEREBY

ORDERED that defendant's motion for summary judgment [doc. no.

14] is GRANTED.

        Judgment shall be entered in defendant's favor.

        The Clerk of Court is directed to mark this matter as

closed.

                            BY THE COURT:


                            s/Gary L. Lancaster      , J.
                            Hon. Gary L. Lancaster,
                            United States District Judge


cc:    All Counsel of Record